UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TIMOTHY A. RODERICK, PERSONAL REPRESENTATIVE OF THE ESTATE OF IRIS N. EVANS, ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No. _____ |
| v. ) ) | |
| LIFE CARE CENTERS OF AMERICA, INC. AND LIFE CARE CENTERS OF ATHENS, ) ) ) ) | Removed from the Circuit Court for McMinn County, Tennessee Case No. 21CV41 |
| Defendants. ) | |

## NOTICE OF REMOVAL

Life Care Centers of America, Inc., d/b/a Life Care Center of Athens ("Life Care"),[1] submits this timely-filed Notice of Removal, reserving all defenses and objections to venue based on 42 U.S.C. § 247d-6d(e)(1), pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, showing the Court as follows:

### I. STATEMENT OF THE CASE

1. Plaintiff commenced this action by filing a Complaint for Wrongful Death Caused by COVID-19 ("Complaint") on February 1, 2021, in the Circuit Court of McMinn County, Tennessee, Case No. 21-CV-41 (the "State Court Action"). A true and correct copy of all pleadings, process, and orders in Life Care's possession, including the Summons and Complaint, are attached as **Exhibit A**.

---

[1] Plaintiff improperly names "Life Care Centers of Athens" as a separate defendant. "Life Care Center of Athens" is an assumed name of Life Care Centers of America, Inc.

2. The Complaint asserts a cause of action for wrongful death under Tennessee Code Annotated § 20-5-113, based on allegations related to Life Care's administration and/or use of facemasks and other personal protective equipment ("PPE"), as well as other measures taken to prevent or mitigate the spread of COVID-19. (*See generally* Compl.)

## II. PROCEDURAL REQUIREMENTS HAVE BEEN MET

3. Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of receiving the Complaint. Because Life Care received service of the Complaint through its registered agent on February 8, 2021, this Notice of Removal is timely.

4. Concurrent with the filing of this Notice of Removal, Life Care has served this Notice on Plaintiff and filed a copy of this Notice with the clerk of the Circuit Court of McMinn County, Tennessee, pursuant to 28 U.S.C. § 1446(d).

5. The United States District Court for the Eastern District of Tennessee embraces McMinn County, Tennessee, the county in which the State Court Action is now pending. Venue is therefore proper for this Notice of Removal under 28 U.S.C. §§ 90(a)(2) and 1446(a).

## III. ARGUMENT AND CITATION TO AUTHORITY

6. This case is removable under 28 U.S.C. § 1441(a) on the basis of "original jurisdiction" because the Complaint "arises under" federal law pursuant to 28 U.S.C. § 1331.

7. In particular, the Complaint presents a federal question arising under the Public Readiness and Emergency Preparedness Act ("PREP Act")—namely, Life Care's immunity from suit based on its administration and use of countermeasures authorized for use against COVID-19. *See* 42 U.S.C. §§ 247d-6d, 247d-6e.

### A. The PREP Act Completely Preempts State Law.

8. The PREP Act authorizes the Secretary of Health and Human Services (the "Secretary") to deem an event a "public health emergency" and issue a "declaration," recommending the "manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures" to combat the public health emergency. 42 U.S.C. §§ 247d(a)-(b), 247d-6d(b).

9. Of particular relevance to this case, the Secretary determined that the COVID-19 pandemic was a "public health emergency" and issued the Declaration for Public Readiness and Emergency Preparedness Act Coverage for Medical Countermeasures Against COVID-19 on March 17, 2020 (the "COVID-19 Declaration"). 85 Fed. Reg. 15198-01.

10. Once such a declaration is made, the PREP Act affords "covered persons" sweeping immunity from suit and liability "with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1).

11. The PREP Act further provides that the exclusive remedy for such claims of loss is to seek compensation through the Covered Countermeasure Process Fund, an emergency fund established in the Treasury upon the Secretary's issuance of a declaration. 42 U.S.C. § 247d-6e.

12. The sole exception to complete immunity pertains to claims based on willful misconduct, but even here the PREP Act provides "an exclusive Federal cause of action" and requires that such claims be filed in the United States District Court for the District of Columbia, for adjudication by a special three-judge panel. 42 U.S.C. § 247d-6d(d)-(e). Moreover, such claims may be filed in the District Court only after the claimant has exhausted the remedies that are available through the Covered Countermeasure Process Fund. 42 U.S.C. § 247d-6e(d)(1).

13. The foregoing provisions of the PREP Act demonstrate Congress's intent to completely preempt state law with respect to claims that implicate PREP Act immunity and create an exclusive federal remedy for such claims. This intent is bolstered by the PREP Act's prohibition against any state law or legal requirement that is "different from" or "in conflict with" any PREP Act requirement related to immunity and the administration of a covered countermeasure. 42 U.S.C. § 247d-6d(b)(8)(A).

14. It is well settled that "complete preemption" creates federal question jurisdiction and is an appropriate basis for removal of an otherwise state law claim. The United States Supreme Court first recognized "complete preemption" as a basis for federal-question removal in *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 559 (1968) (recognizing the Labor Management Relations Act as a complete preemption statute). Since that time, the Supreme Court has extended the doctrine to the Employee Retirement Income Security Act ("ERISA") and the National Bank Act. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11 (2003).

15. In *Beneficial National Bank*, the Court explained federal-question removal based on complete preemption as follows:

> [A] state claim may be removed to federal court . . . when a federal statute wholly displaces the state-law cause of action through *complete pre-emption*. When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law . . .
>
> In the two categories of cases where this Court has found complete preemption . . . the federal statutes at issue *provided the exclusive cause of action* for the claim asserted and also *set forth procedures and remedies governing that cause of action*.

*Id.* at 8 (emphasis added) (footnotes omitted) (citations omitted).

16. In *Beneficial National Bank*, the plaintiff brought an action for usury under state law, which was completely preempted by the usury provisions of the National Bank Act, 12 U.S.C. §§ 85 and 86. The Court held that Sections 85 and 86 collectively "supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive." *Id.* at 11. Therefore, the Court held that federal question jurisdiction existed under the "complete preemption" doctrine. *Id.* at 5.

17. Federal circuit courts and district courts have since found "complete preemption" in other contexts where a federal statute wholly displaces state law in favor of an exclusive federal remedy for what is styled as a state-law claim. The Second Circuit held that the Air Transportation Safety and System Stability Act ("ATSSSA") is a complete preemption statute. *In re WTC Disaster Site*, 414 F.3d 352, 380 (2d Cir. 2005). The Fifth Circuit has applied the doctrine in the context of the federal Copyright Act. *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015).[2] And a New York state appellate court has determined that the PREP Act is a complete preemption statute in the context of litigation arising out of the H1N1 pandemic. *Parker v. St. Lawrence Cty. Pub. Health Dep't*, 102 A.D.3d 140, 143 – 45 (N.Y. App. Div. 2012) (dismissing state law complaint for lack of jurisdiction).

18. The Department of Health and Human Services ("HHS"), which administers the PREP Act, has expressly stated that the Act is a complete preemption statute, and the United States Department of Justice agrees.

19. On January 8, 2021, the Secretary of HHS issued Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision ("AO 21-01"), confirming unequivocally that "the PREP Act is a "complete preemption" statute. The Secretary

---

[2] *But see Nott v. Aetna U.S. Healthcare, Inc.*, 303 F. Supp. 2d 565 (E.D. Pa. 2004) (declining to find complete preemption based on the Medicare Act).

explained, "The *sine qua non* of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both." (AO 21-01 at 2.)[3]

20. AO 21-01 is not simply "advisory" but, rather, has the same "controlling weight" as the COVID-19 Declaration and the PREP Act itself. In the Fourth Amendment to the COVID-19 Declaration, the Secretary expressly stated, "This Declaration must be construed in accordance with the Advisory Opinions of the Office of the General Counsel (Advisory Opinions). I incorporate those Advisory Opinions as part of this Declaration. This Declaration is a 'requirement' under the PREP Act." 85 Fed. Reg. 79190. Where Congress has expressly delegated interpretive authority to an agency, that agency's interpretive proclamations are controlling on federal courts. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

21. To avoid any doubt, the Secretary issued a Fifth Amendment to the COVID-19 Declaration on January 28, 2021, confirming the completely preemptive force of the PREP Act: "The plain language of the PREP Act makes clear that there is complete preemption of state law. . . . Furthermore, preemption of State law is justified to respond to the nation-wide public health emergency . . . ." 86 Fed. Reg. 7872.

22. The United States Department of Justice ("DOJ") also has taken the position that the PREP Act is a complete preemption statute. In *Bolton v. Gallatin Center for Rehab. & Healing, LLC*, No. 3:20-cv-00683 (M.D. Tenn. filed Aug. 7, 2020), the DOJ filed a Statement of Interest of the United States ("SOI"), which reflects the official position of the United States with respect to

---

[3] AO 21-01 is available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf (last visitied Mar. 1, 2021).

the preemptive effect of the PREP Act. (*See* Dkt. [35], filed Jan. 19, 2021). The SOI provides, *inter alia*, that:

- "[T]he PREP Act completely preempts claims related to the administration or use of covered countermeasures with respect to a public health emergency, as declared by the Secretary. Therefore, cases that include such claims necessarily include federal questions and, therefore, are removable." (Dkt. [35] at 1 of 15.)

- "The PREP Act is just such a complete preemption statute . . . . Two key provisions of the PREP Act operate together to demonstrate its completely preemptive nature: the immunity provision and the exclusive alternative remedy provision." (*Id.* at 7 of 15.)

- "[R]eading these PREP Act provisions as completely preemptive accords with the reasons Congress enacted the law. An effective response to national health emergencies depends on the prompt and willing cooperation of private partners. Thus, the Act broadly immunizes covered persons from claims relating to their administration of specified countermeasures, while specifying exclusive alternative remedies for certain claims." (*Id.* at 9 of 15.)

The United States government concluded,

> "[T]hese PREP Act provisions supersede both the substantive and the remedial provisions of state tort laws and create a federal remedy for certain claims of loss relating to covered countermeasures that is exclusive, even when a state complainant . . . relies entirely on state law. Because they provide the exclusive cause of action for such claims, ***there is, in short, no such thing as a state law claim of loss against a covered person in connection with their use or administration of a covered countermeasure***."

(*Id.* at 12 of 15 (citing *Beneficial Nat'l Bank*, 539 U.S. at 11 (internal quotation marks omitted and emphasis added)).)

23. The DOJ's SOI is of "considerable interest" to the courts considering complete preemption under the PREP Act. *See Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004) (finding State Department's position as *amicus curiae* on statutory construction and federal jurisdiction of "considerable interest").

24. In sum, the PREP Act is a complete preemption statute, giving rise to federal question jurisdiction over claims that implicate the immunity provision of the Act.

**B.     The Complaint Implicates the PREP Act and this Court's Original Jurisdiction.**

25. As stated above, the PREP Act affords "covered persons" complete immunity from suit and liability "with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). The Complaint implicates this immunity provision and, for the reasons explained in Part A above, permits removal to this Court based on federal-question jurisdiction.

26. Life Care is a "covered person" as defined by the Act. In particular, Life Care is both a "qualified person" and "program planner" with respect to the administration or use of a covered countermeasure, as explained below. 42 U.S.C. § 247d-6d(i)(2)(B).

27. "Qualified person" is defined as a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasures were prescribed, administered, or dispensed." 42 U.S.C. § 247d-6d(i)(8).

28. "Program planner" is defined as "a State or local government, including . . . a person[4] employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific

---

[4] "Person" is defined to include "an individual, partnership, corporation, association, entity, or public or private corporation." 42 U.S.C. § 247d-6d(i)(5).

advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b)." 42 U.S.C. § 247d-6d(i)(6).

29. Life Care is a "qualified person" because it is a skilled nursing facility, licensed by the Tennessee Department of Health, and it employs a number of Licensed Registered Nurses and Licensed Practical Nurses, who are authorized to administer covered countermeasures. *See* 42 U.S.C. § 247d-6d(i)(8).

30. Moreover, at all relevant times, Life Care was acting as a "program planner," administering and supervising covered countermeasures to treat and prevent the spread of COVID-19. 42 U.S.C. § 247d-6d(i)(6). The Office of the Secretary has confirmed that senior living communities are "program planners" and thus "covered persons" under the PREP Act. (Aug. 14, 2020 Ltr. from HHS General Counsel Robert P. Charrow to Thomas Barker, attached hereto as **Exhibit B**.)

31. "Covered countermeasure" is defined as follows:

> Covered countermeasures are any antiviral, any other drug, any biologic, any diagnostic, and other device, or any vaccine used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product.
>
> Covered countermeasures must be "qualified pandemic or epidemic products," or "security countermeasures," or drugs, biological products, or devices authorized for investigational or emergency use, as those terms are defined in the PREP Act, the FD&C Act, and the Public Health Service Act, or any respiratory protective device approved by NIOSH under 42 CFR part 84, or any successor regulations.

85 Fed. Reg. 15198 (quoting 42 U.S.C. § 247d-6b(c)(1) & 42 U.S.C. § 247d-6d(i)(1)).

9

32. Personal protective equipment ("PPE"), including but not limited to facemasks, is a "covered countermeasure" against COVID-19. 42 U.S.C. § 247d-6d(i)(1); 42 U.S.C. § 247d-6b(c)(1); *see also* AO 21-01 (PPE a covered countermeasure against COVID-19).

33. For example, a facemask used to prevent or mitigate the spread of COVID-19 is a "qualified pandemic or epidemic products," as defined by 42 U.S.C. § 247d-6d(i)(7); a "device" used, designed, and developed to mitigate or prevent the spread of COVID-19; and a device authorized for emergency use in accordance with the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 360bbb-3, 360bbb-3a, 360bbb-3b.

34. At all times relevant to the Complaint (and continuing to the present), Life Care and its personnel administered or implemented covered countermeasures to control the spread of COVID-19 in its facilities, including Life Care Center of Athens. For example, Life Care administered face masks and other PPE to its personnel and staff and directed that all persons wear such PPE while in the facility.

35. Life Care implemented these covered countermeasures consistent with the COVID-19 Declaration, guidance from the HHS Secretary, and guidance issued by HHS's Centers for Medicare & Medicaid Services ("CMS").

36. For example, on March 4, 2020, CMS issued guidance on the screening of entrants into nursing homes. *Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes* (March 4, 2020), attached hereto as **Exhibit C**. Pursuant to CMS' recommendations, Life Care implemented screening of visitors who (1) traveled internationally within the last 14 days, (2) exhibited signs or symptoms of a respiratory infection, such as fever, cough, or sore throat, or (3) had contact with someone actually or potentially infected with COVID-19. *Id.* Access to Life Care was restricted if a visitor fell into any of these categories. *Id.*

37. On March 10, 2020, CMS provided further guidance related to the use of facemasks when industrial respirators were unavailable. This guidance was issued as part of CMS' efforts to "continue to explore flexibilities and innovative approaches within [its] regulations to allow health care entities to meet the critical health needs of the country." *Guidance for Use of Certain Industrial Respirators by Health Care Personnel* (March 10, 2020).[5] In the March 10 memorandum, CMS addressed the supply, allocation, and use of PPE used to prevent the spread of COVID-19, including eye protection, medical gowns, gloves, and airborne infection isolation rooms, in addition to facemasks and respirators.

38. On April 2, 2020, CMS issued new guidelines for the prevention of the spread of COVID-19, directed specifically at long-term care facilities. *COVID-19 Long-Term Care Facility Guidance* (April 2, 2020).[6] In doing so, CMS noted that "[l]ong-term care facilities are a critical component of America's healthcare system." CMS further noted that the Centers for Disease Control and Prevention ("CDC") and CMS were providing "critical, needed leadership for the Nation's long-term care facilities to prevent further spread of COVID-19," and that long-term care facilities were to immediately implement symptom screening for all persons seeking to enter a long-term care facility—*i.e.*, residents, staff, visitors, outside healthcare workers, vendors, etc. Facilities were ordered to specifically ask about COVID-19 symptoms and to check the temperature of all visitors, as well as limit access points and ensure that all accessible entrances have a screening station.

---

[5] This report is available at https://www.cms.gov/files/document/qso-20-17-all.pdf (last visited Mar. 2, 2021).
[6] Available at http://www.cms.gov/files/document/2440-covid-19-long-term-care-facility-guidance.pdf (last visited Mar. 2, 2021).

39. Plaintiff seeks damages against Life Care for the alleged wrongful death of Ms. Iris Evans, based on the allegations that Life Care failed to properly administer the foregoing covered countermeasures. (*See generally* Compl.)

40. In particular, Plaintiff alleges that Life Care acknowledge the demand for additional facemasks and PPE and called on persons to donate any extra, unused, and unopened PPE. (Compl. at ¶ 6.)

41. Plaintiff alleges that despite Life Care's awareness of the demand for PPE, Life Care failed to provide facemasks and other PPE to all persons within its facility at all times, such that unmasked persons were permitted to come into contact with residents, such as Ms. Evans. (*Id.* at ¶¶ 6-9.)

42. Plaintiff further alleges that Life Care failed to have adequate infection control policies and procedures, failed to always socially distance, and failed to limit visitors to the facility. (*Id.* at 8-10.)

43. Plaintiff contends that due to Life Care's alleged failure to ensure constant mask wearing and the other alleged failures described above, Ms. Evans contract COVID-19 and died. (*See generally* Compl.)

44. Plaintiff's claim for wrongful death plainly "arises out of, relates to, and results from" Life Care's administration or use of covered countermeasures, including but not limited to its use and non-use of facemasks and other PPE. *See also Garcia v. Welltower OpCo Grp., LLC*, 2021 WL 492581, at *8 (C.D. Cal. Feb. 10, 2021) (finding claims related to use and misuse of PPE and infection control measures such as symptom checking and limiting visitation "directly relate to covered countermeasures within the meaning of the PREP Act"); *but see, e.g.*, *Dupervil v. Alliance Health Ops., LLC*, 2021 WL 355137 (E.D.N.Y. Feb. 2, 2021).

45. The Complaint, therefore, implicates the PREP Act and is removable on the basis of federal question jurisdiction. 28 U.S.C.A. § 1441(a).

46. A copy of this Notice of Removal is being filed with the Clerk of the McMinn County Circuit Court.

47. A Civil Cover Sheet for this matter is attached as **Exhibit D**.

48. Life Care demands that any trial of this matter in federal court be heard by a full jury.

**THEREFORE**, having shown that this case is properly removable, Defendants provide notice pursuant to 28 U.S.C.A. § 1446 that the State Court Action is removed to the United States District Court for the Eastern District of Tennessee and respectfully request that this Court exercise jurisdiction over this case.

Respectfully submitted,

**MILLER & MARTIN PLLC**

By: s/Roger W. Dickson
    Roger W. Dickson, TN BPR #001933
    Kyle W. Eiselstein, TN BPR #020727
    Meredith C. Lee, TN BPR #033948
1200 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone (423) 756-6600
roger.dickson@millermartin.com
kyle.eiselstein@millermartin.com
meredith.lee@millermartin.com

***Counsel for Life Care Centers of America, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system and served electronically and/or via first-class U.S. mail, postage prepaid, upon all counsel as indicated below. Parties may also access this filing through the Court's ECF system.

        C. Mark Warren
        Warren & Griffin, P.C.
        Suite 100, Dome Building
        736 Georgia Avenue
        Chattanooga, TN 37402

This 9th day of March, 2021.

        By: s/Roger W. Dickson

14

Case 1:21-cv-00046-TRM-CHS   Document 1   Filed 03/09/21   Page 14 of 14   PageID #: 14